## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00881-DDD-MEH

ADOLAS, LLC, a North Dakota limited liability company,

    Plaintiff,

v.

ALEXANDER ANDREWS & ASSOCIATES, LLC, a New York limited liability company,
TCFG, LLC, a Texas limited liability company, and
STEELE INTERNATIONAL HOLDINGS, INC., a Texas corporation,

    Defendants.

---

### PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS WITH PREJUDICE
### OF DEFENDANT ALEXANDER ANDREWS & ASSOCIATES, LLC

---

PLAINTIFF Adolas, LLC ("Plaintiff" or "Adolas"), by and through its attorneys, Coan, Payton & Payne, LLC, responds to the *Motion to Dismiss With Prejudice* (the "Motion") of Defendant Alexander Andrews & Associates, LLC ("AA&A") and states as follows:

### I.
### INTRODUCTION

While anyone may be able to "sue anyone for anything," quoting pithy quips does not absolve a defendant from liability for defrauding a plaintiff of $2,000,000, as is the issue in this case. In its Motion, AA&A asks for Plaintiff's claims to be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(2). AA&A alleges that Plaintiff "named the wrong entity," that AA&A was not a party to the Escrow Agreement (the "Agreement"), and that AA&A was not involved in any of the transactions described in

the Complaint, and thus the claims against AA&A should be dismissed for failing to state a claim on which relief can be granted. AA&A also alleges that this Court does not have personal jurisdiction over it for the same reasons. The facts of the Complaint, however, properly state claims against AA&A, demonstrate that AA&A was a party to the Agreement, show that AA&A participated in transactions described in the Complaint, and establish that this Court can exercise personal jurisdiction over AA&A. Thus, AA&A's Motion should be denied.

## II.
## FAILURE TO STATE A CLAIM

*A. Legal Standard*

The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. *Mobley v. McCormick*, 40 F.3d 337, 340. While a plaintiff's obligations to provide the grounds of his entitlement to relief require more than labels and conclusions, a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555. The factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if doubtful in fact. *Id*. To properly state a claim, "Fed. R. Civ. Proc. 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678. A court is to accept all well-pleaded allegations as true, and view those allegations in the light most favorable to the non-moving party. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. 662 at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *See Id*. at 679.

### B. Argument

Assuming all factual matters pled in the Complaint are true, the facts state plausible claims of relief against AA&A for the alleged misconduct. AA&A claims that Plaintiff's breach of contract and other claims against AA&A are "largely deficient." AA&A's only support of this assertion is that AA&A is supposedly a different entity than the Alexander Andrews & Associates named in the Agreement and the Disbursement Request because those documents name Alexander Andrews & Associates UK, Ltd., a United Kingdom limited company ("AA&A-UK"), not AA&A, a New York limited liability company. AA&A also briefly argues that AA&A's obligations under the Agreement were limited to reviewing a form standby-letter-of-credit ("SBLC"). Plaintiff does not believe that attacking the merits of the contractual terms and provisions in the Agreement is appropriate in a motion to dismiss to imply that claims in the Complaint fail to sufficiently state a claim against AA&A. To the extent that AA&A's arguments are persuasive, the terms of the Agreement and the factual allegations in the Complaint do establish that Plaintiff's claims of relief against AA&A are at least plausible.

Despite AA&A's bald assertions to the contrary, it is reasonable to infer that AA&A is liable under the Agreement because AA&A is, in fact, the same entity as AA&A-UK, given the common information the two allegedly separate entities share. Section 3.3 of the Agreement provides that notice to AA&A-UK can be sent to Aubrey Alexander at the email address of

a.alexander@aandrewsandassociates.com.[1] *See* Complaint Exhibit 1. Aubrey Alexander, the alleged Managing Member and President of AA&A-UK, signed the Agreement on behalf of AA&A-UK. Aubrey Alexander is also the Managing Member of AA&A. *See* Complaint ¶ 2. Also, according to AA&A's website, Aubrey Alexander can be contacted at the exact same email address of a.alexander@aandrewsandassociates.com, the contact email listed for AA&A-UK in the Agreement. The New York Secretary of State database (of all current and former entities) lists only a single entity named "Alexander Andrews & Associates," which is the AA&A named in the Complaint. *See* Complaint ¶¶ 1-2. In addition, the Agreement was entered into in November of 2017. *See* Complaint ¶ 2. This means that there is a significant time period since November of 2017 in which AA&A-UK could have changed its name to be operating as AA&A. From these facts, common sense would suggest that AA&A-UK is, in fact, the same entity as AA&A.

Plaintiff believes that in 2017, AA&A was doing business under the trade name of AA&A-UK or that at some point after 2017, AA&A-UK changed its name to AA&A. This is supported by a communication Plaintiff received from AA&A and AA&A-UK in December of 2018. On or about December 4, 2018, Plaintiff sent a demand letter addressed to Aubrey Alexander at AA&A-UK at First Floor, Woodberry Grove, Finchley London N12 0DR,[2] and to AA&A-UK at 90 State Street, Suite 7000, Box 80, Albany, New York 12207.  Plaintiff also sent demand letters to other individuals involved with the Agreement. *See* Complaint ¶ 32; Demand Letter attached hereto as **Exhibit 1**. On December 6, 2018, Aubrey Alexander of

---

[1] In the Agreement, this email address literally appears as a.alexander@aandrewsandasociates.com (one "s" missing from associates). Plaintiff believes this is clearly a typo and not, in fact, a distinct email address.

[2] This is the address provided for notice to AA&A-UK in Section 3.3 of the Agreement.

AA&A, using the email address a.alexander@aandrewsandassociates.com, sent a brief inquiry asking for Plaintiff to send a copy of the Agreement between AA&A-UK and Plaintiff for AA&A to review. *See* Email attached hereto as **Exhibit 2**. This suggests that AA&A is, in fact, AA&A-UK because if they were separate and distinct entities as AA&A now claims, it would not make sense for AA&A to allocate its resources to review a demand letter and materials that were directed to an entirely different entity. Additionally, on December 5, 2018, undersigned counsel received a reply to its demand letter sent to First Floor, Woodberry Grove, Finchley London from a representative of AA&A-UK, Alan G. Edmondson. Mr. Edmondson stated:

> It seems Aubrey Alexander may have used the address of Alexander Andrews & Associates UK Limited in the UK in addition to the USA company and the UK company has no address in the USA.
> 
> Aubrey Alexander is not a director of Alexander Andrews & Associates UK Limited, nor a shareholder or signatory and any direction from him in that capacity would be illegal.
> 
> AAA UK … is a dormant company.

*See* Email attached hereto as **Exhibit 3**. This reinforces that AA&A-UK is actually the same entity as AA&A and that AA&A is indeed a party to, and liable for, the Agreement. These same commonalities also indicate that AA&A was a party to the Disbursement Request.

Additionally, the notion that AA&A and AA&A-UK are, in fact, the same entity and that AA&A was a party to the Agreement and therefore owed contractual obligations to Plaintiff is reinforced by the fact that AA&A subsequently represented that it was, or would be, performing the Agreement. "Partial performance provides a useful indicator of a contract where a party would not undertake the action in question absent the belief that a contract had been formed. In other words, partial performance is most relevant where such performance would not be expected absent a final agreement." *Ray Legal Consulting Grp. v. DiJoseph*, 2016 U.S. Dist.

LEXIS 49030.[3] Here, AA&A was involved with the transactions described of in the Complaint and a party to the Agreement because it was involved in the partial performance of the Agreement. In and around March of 2018, a representative of TCFG, LLC ("TCFG") communicated with representatives of AA&A about the SBLC at issue in the Agreement. *See* Complaint ¶ 29. Representatives of AA&A also communicated with representatives of TMO International Group, Inc. ("TMO") about the status of the SBLC. *See* Complaint ¶¶ 28-30, 39. Contrary to AA&A's assertions that it was not involved with any of the transactions in the Complaint, this demonstrates that AA&A partially performed the Agreement because months after performance was due, representatives of AA&A were communicating with the other parties to the Agreement about the SBLC and when it would be provided. Representatives of TMO and TCFG have subsequently provided affidavits regarding the various communications that they have had with Plaintiff, Aubrey Alexander, and AA&A, respectively. Those affidavits are attached hereto as **Exhibit 4**, Affidavit of Robert Bailey, and **Exhibit 5**, Affidavit of Cameron Lee.

The facts pled in the Complaint establish that AA&A is the same entity as the AA&A-UK named in the Agreement and AA&A partially performed the Agreement. Thus, it is at least plausible that AA&A is liable to Plaintiff for breach of contract and breach of the implied covenant of good faith and fair dealing.

The facts pled in the Complaint also establish that it is at least plausible that AA&A is liable to Plaintiff for unjust enrichment, civil theft, and conversion. As discussed above, AA&A was a party to the Agreement and representatives of AA&A communicated with representatives of TCFG and TMO about the status of the SBLC. The Agreement only permitted transfer of

---

[3] Plaintiff cites to New York law because Section 3.4 of the Agreement designates New York law as the governing law for the contract.

Plaintiff's $2,000,000 to Steele Financial[4] ("Steele"). *See* Complaint ¶ 22. The deposit, however, was transferred to TCFG after AA&A allegedly reviewed a form SBLC to be issued and signed the transfer. *See* Complaint ¶ 24. In relation to the later conspiracy claim, Plaintiff believes that AA&A, TCFG, and Steele acted in concert to take Plaintiff's $2,000,000. While Plaintiff does not have any records of its deposit after it was transferred to TCFG, Plaintiff believes that AA&A had, or has, some portion of those funds. This is reinforced by the fact that AA&A and TCFG were later involved with a $50,000,000 SBLC in Sierra Leone (*see* Complaint ¶ 27), and representatives of TCFG and AA&A communicated that the delivery of the SBLC in the Agreement was intertwined with that SBLC. *See* Complaint ¶¶ 27-30. Thus, the facts suggest that AA&A did, or does, possess at least some portion of the $2,000,000 which means that it is at least plausible that AA&A is liable to Plaintiff for unjust enrichment, civil theft, and conversion. Additionally, if it is established that AA&A did engage in a conspiracy with TCFG, Steele, or other parties, AA&A would be liable for these acts since every person who participates in a conspiracy is deemed to be a party to all acts performed by co-conspirators in furtherance of the conspiracy, such as taking the money from Plaintiff. *See People v. Beck*, 593 P.2d 371, 373.

The facts pled in the Complaint also establish that it is at least plausible that AA&A is liable to Plaintiff for fraud, negligent misrepresentation, tortious interference with a contract, negligence, and conspiracy. Tortious interference with a contract, negligence, and conspiracy do not rely on Plaintiff having an underlying contractual relationship with AA&A. Additionally, the facts in the Complaint demonstrate that AA&A was involved with this transaction, knew about Plaintiff's contracts to purchase and deliver sugar, failed to act as a reasonably prudent financial professional, and prevented Plaintiff from performing its sugar contracts. As discussed above,

---

[4] Plaintiff believes that Steele Financial is or was doing business as Steele International Holdings, Inc., the party named in Plaintiff's Complaint.

AA&A was also a party to the Agreement and representatives of AA&A communicated with representatives of TCFG and TMO about the status of the SBLC. The communications, in particular, suggest that AA&A made false representations to induce Plaintiff not only to deposit $2,000,000, but also to discourage Plaintiff from pursuing recourse sooner. *See* Complaint ¶¶ 99-106.

Assuming all factual matters pled in the Complaint are true, the facts demonstrate that AA&A was a party to the Agreement and was involved with these transactions, and state plausible claims of relief against AA&A for the alleged misconduct. Therefore, AA&A's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

## III.
## LACK OF PERSONAL JURISDICTION

*A. Legal Standard*

A court has discretion to address a Rule 12(b)(2) motion prior to trial based solely on documentary evidence or by holding a hearing. See *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174. When a motion to dismiss for lack of jurisdiction is decided only on the documentary evidence, the plaintiff need only demonstrate a *prima facie* showing of personal jurisdiction to defeat the motion. *See Id*. A *prima facie* showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187. The plaintiff may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that, if true, would support jurisdiction over the defendant. *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091. The purpose of the light *prima facie* burden of proof at this early stage of litigation is to screen out "cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus." *See Foster-Miller, Inc. v. Babcock & Wilcox Can*., 46 F.3d 138, 145.

      i.      *Personal Jurisdiction*

A plaintiff seeking to invoke a Colorado court's jurisdiction over a non-resident defendant must comply with the requirements of our long-arm statute and constitutional due process. *Archangel*, 123 P.3d 1187 at 1193. Colorado's long-arm statute "confers the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." *Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060, 1065. When evaluating personal jurisdiction under the due process clause, courts use a two-step analysis. *Id*.

      ii.      *Minimum Contacts*

At the first step, courts examine whether the defendant has minimum contacts with the forum state such that he should reasonably anticipate being hauled into court there. *See id*. Specific jurisdiction is properly exercised if "the defendant has purposefully directed his activities at residents of the forum." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472. The minimum contacts inquiry in regard to specific jurisdiction assesses if the defendant purposefully directed his activities at residents of the forum, and if the litigation results from alleged injuries that arise out of or relate to those activities. *OMI Holdings*, 149 F.3d 1086 at 1091. Where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. *Burger King*, 471 U.S. 462 at 475-476. Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. *Id*. at 476. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the

reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across State lines, thus obviating the need for physical presence within a State in which business is conducted. *Id*.

   iii. <u>*Notions of Fair Play and Substantial Justice*</u>

At the second step, courts ask whether the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *See Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060 at 1066. This inquiry requires determining whether the exercise of personal jurisdiction is reasonable under the circumstances. *See id.* A court may consider several factors in determining whether the exercise of jurisdiction is proper, including the burden on the defendant, the forum State's interest in resolving the controversy, and the plaintiff's interest in attaining effective and convenient relief. *See Burger King*, 471 U.S. 462 at 477.

 B. Argument

This Court has specific jurisdiction over AA&A because AA&A purposefully availed itself of the privilege of conducting business in Colorado and engaged in tortious acts that injured Plaintiff in Colorado, because this litigation arises out of AA&A's forum-related contacts, and because asserting personal jurisdiction over Defendants would comport with fair play and substantial justice.

   i. <u>*AAA's Minimum Contacts with Colorado*</u>

Colorado's "long-arm" statute, C.R.S. 13-1-124(1)(a), permits jurisdiction over any person who transacts business within the State. Here, as Plaintiff's Complaint states, AA&A transacted business within Colorado and this Court can properly exercise specific jurisdiction over it.

As discussed above, AA&A deliberately created continuing and future obligations with Plaintiff in Colorado because AA&A was a party to the Agreement and agreed to provide an SBLC for Adolas. *See* Complaint ¶¶ 21-22. These continuing obligations are reinforced by AA&A's representations that it would provide an SBLC even after the time for performance under the Agreement had passed. *See* Complaint ¶¶ 28-30. Further, jurisdiction is not improper merely because AA&A did not physically enter Colorado. *See Burger King*, 471 U.S. 462 at 476. This litigation clearly arises out of AA&A's contacts with Colorado because Plaintiff's breach of contract claims arise directly from AA&A's failure to adequately perform its obligations under the Agreement.

Colorado's "long-arm" statute, C.R.S. § 13-1-124(1)(b), also permits jurisdiction over any person who commits a tortious act within the State. Jurisdiction over a non-resident defendant may be supported by the commission of a single tort that causes damage within the forum. *Pace v. D & D Fuller CATV Constr., Inc.*, 748 P.2d 1314, 1316, 1987. In order to satisfy the statutory standard for assertion of long-arm jurisdiction, it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado. Rather, "the statute may be satisfied when (1) tortious conduct occurs in Colorado, or (2) when tortious conduct initiated in another state causes injury in Colorado." *See Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1114. The statute is satisfied so long as the resultant harm occurs within the State, and when identifying a tortious act for purposes of determining whether harm occurred in Colorado, we do not look at incidents in isolation, but instead at the totality of conduct by the actor. *Parocha v. Parocha*, 418 P.3d 523, 527.

In *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, the Supreme Court of Colorado determined that the term "tortious act" in C.R.S. § 13-1-124(1)(b) implies the total act

embodying both the cause and effect, but it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado to satisfy the statutory standard for asserting long-arm jurisdiction. *See Classic Auto*, 832 P.2d 233, 235. There, a defendant in Nebraska was subject to jurisdiction in Colorado for tortious acts because the defendant made misrepresentations in nationally circulated magazines and misrepresentations specifically directed into Colorado in the course of telephone calls to the plaintiff. *See id*. at 236. While the defendant never left Nebraska in the course of directing the false adverting material and phone communications, such misrepresentations "were not complete until received by [the plaintiff] in Colorado, and this was sufficient to constitute tortious acts within the state." *Id*. Since the defendant's intentional and allegedly tortious actions were "expressly aimed" at Colorado, the defendant should reasonably have anticipated being hauled into court in Colorado. *Id*. at 239.

Here, as Plaintiff's Complaint states, AA&A committed tortious acts of civil theft, conversion, fraud, negligent misrepresentation, tortious interference with a contract, negligence, and conspiracy. Like the entity in *Classic Auto*, AA&A made numerous false and misleading representations to Plaintiff. *See* Complaint ¶¶ 99-123. The misrepresentations that serve as the foundation for Plaintiff's claims of fraud and negligent misrepresentation were not complete until they were received by Plaintiff; thus, AA&A committed a tortious act within Colorado. Similarly, the harm from AA&A's tortious acts of conversion, civil theft, fraud, and conspiracy were suffered by Plaintiff in Colorado, which is sufficient to assert long-arm jurisdiction over AA&A in Colorado.

Additionally, a co-conspirator's contacts with the forum may be attributed to other conspirators for jurisdictional purposes. *Nat'l Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d

1231, 1237. Here, this means that TCFG's and Steele's acts and statements directed to Plaintiff are as if AA&A performed them itself.

This litigation clearly arises out of AA&A's contacts with Colorado because Plaintiff's tort claims arise directly from AA&A's failure to adequately perform its obligations owed to Plaintiff and from the fraudulent and false representations that AA&A made to Plaintiff.

It is clear that by entering into a contract to deliver an SBLC to Plaintiff, sending communications to Plaintiff in Colorado, and injuring Plaintiff in Colorado, AA&A specifically and purposefully directed contacts to Colorado and purposefully availed itself of the jurisdiction of the Colorado Courts.  This present litigation also arises out of, and relates to, these contacts with Colorado.

> ii.   *Jurisdiction Complies with Notions of Fair Play and Substantial Justice*

Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. 462 at 476. This inquiry requires determining whether the exercise of personal jurisdiction is reasonable under the circumstances. *See Melea, Ltd.*, 511 F.3d 1060 at 1066. A court may consider several factors in determining whether the exercise of jurisdiction is proper, including: (1) the burden on the defendant; (2) the plaintiff's interests in obtaining convenient and effective relief; (3) the state's interest in adjudicating disputes of this type and vindicating the rights of its citizens; (4) the interstate judicial system's interest in the efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Parocha*, 418 P.3d 523 at 529.

Here, AA&A would not be unduly burdened by litigating this matter in Colorado. AA&A purposefully directed its actions and activities at a resident of Colorado, and thus must present a compelling case that the presence of other considerations would render jurisdiction unreasonable. *See Burger King*, 471 U.S. 462 at 477. While traveling out-of-state for litigation may be inconvenient, litigation in any state is inconvenient. For instance, in *Burger King*, the Supreme Court recognized that forcing a franchise owner from Michigan to litigate in Florida did not offend due process; therefore, requiring a business in New York to litigate in Colorado also does not create a compelling case that the jurisdiction is unreasonable.

Plaintiff has a strong interest in resolving this dispute in Colorado to obtain convenient and effective relief because it is a resident of Colorado, that is where its injuries occurred, many of Plaintiff's witnesses and experts are located in Colorado, and the laws of Colorado would govern all the claims except for any breach of contract claims that are subject to the choice-of-law clause in the purchase agreement.

The State of Colorado also has a strong interest in resolving this dispute to protect and vindicate the rights of its residents and businesses, and to hold out-of-state actors accountable for targeting and injuring Colorado residents and businesses with fraudulent, dishonest, and other nefarious actions.

The interstate judicial system's interest in the efficient resolution of controversies weighs in favor of jurisdiction in Colorado because the judicial system has an interest in providing residents with a local venue in which they can litigate claims.

Further, states have a shared interest in furthering a social policy of discouraging and combating fraudulent and dishonest actions by out-of-state entities. This interest would be hindered if out-of-state entities, such as AA&A, could engage in fraud and deception in a State

and then hide behind State lines to impede victims from seeking redress in the court where the victim is located.

Consideration of these factors conclusively demonstrates that subjecting AA&A to jurisdiction in Colorado comports with traditional notions of fair play and substantial justice.

## IV.
## DISMISSAL WITH PREJUDICE

AA&A asks for all of Plaintiff's claims to be dismissed with prejudice. "Dismissal of an action with prejudice is a severe sanction applicable only in extreme circumstances." *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.6. "Because dismissal with prejudice 'defeats altogether a litigant's right to access to the courts,' it should be used as 'a weapon of last, rather than first, resort.'" *Id*. Generally, dismissal with prejudice should occur only where there has been a "clear record of delay or contumacious conduct by the plaintiff." *Id*. Here, Plaintiff has not acted with delay or any other bad faith and AA&A does not allege this. Thus, to the extent this Court believes dismissal of the claims against AA&A is warranted, such dismissal should be without prejudice in order to preserve Plaintiff's right to access the courts and obtain redress for the wrongs it has suffered.

## V.
## CONCLUSION

The factual matters pled in the Complaint, assumed to be true and viewed in the light most favorable to Plaintiff, state plausible claims of relief against AA&A for the alleged misconduct because AA&A was a party to the Agreement and was involved with this transaction.

Further, the documentary evidence in this case, viewed in the light most favorable to Plaintiff, clearly establishes a *prima facie* case for AA&A being subject to personal jurisdiction

in Colorado because AA&A purposefully availed itself of the jurisdiction of Colorado and such jurisdiction comports with traditional notions of fair play and substantial justice.

Therefore, Plaintiff respectfully requests that AA&A's Motion to Dismiss be denied and for all other relief the Court may deem appropriate.

Dated this 4th day of June, 2019.

**COAN, PAYTON & PAYNE, LLC**
*Attorneys for Plaintiff Adolas, LLC*

*s/Brett Payton*
By:  Brett Payton, #37127
      Donovan P. Gibbons, #52422

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of June, 2019, a true and accurate copy of the foregoing **Plaintiff's Response to the Motion to Dismiss with Prejudice of Defendant Alexander Andrews & Associates, LLC** was served upon the following via the Electronic Case Filing System ("CM/ECF") of the U.S. District Court for the District of Colorado:

Jeffrey R. Thomas, Esq., #28413
Thomas Law LLC
3773 Cherry Creek North Drive, Suite 600
Denver, Colorado 80209
*Counsel for Defendant Alexander Andrews & Associates, LLC*

*s/Sandy Hartman*
By:  Sandy Hartman, Senior Paralegal